# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| B.Y.C.C. on behalf of herself and on behalf of her minor child, M.S.C.C., <br><br> J.A.L.C. on behalf of himself and on behalf of his minor child, L.L.G., <br><br> R.J.P. on behalf of himself and on behalf of his minor child, O.R.J.J., <br><br> Plaintiffs, <br><br> -vs- <br><br> UNITED STATES OF AMERICA <br><br> Defendant. | Civil Action Nos.: 22-cv-06586-MAS (DEA) <br> 22-cv-06587-MAS (DEA) <br> 22-cv-06588-MAS (DEA) * <br><br> Hon. Douglas E. Arpert, U.S.M.J. <br><br> **JOINT ~~PROPOSED~~ DISCOVERY PLAN** *and Scheduling Order* |

*\* These actions are hereby consolidated for pretrial discovery and case management purposes.*

1. *Set forth the name of each attorney appearing, the firm name, address and telephone number and facsimile number of each, designating the party represented.*

| | |
|---|---|
| *For Plaintiffs B.Y.C.C. and M.S.C.C.* <br> Natalie J. Kraner <br> nkraner@lowenstein.com <br> Stephanie Ashley <br> sashley@lowenstein.com <br> Logan Vickery <br> lvickery@lowenstein.com <br><br> *For Plaintiffs J.A.L.C. and L.L.G.* <br> Catherine Weiss <br> cweiss@lowenstein.com <br> Amanda Sewanan <br> asewanan@lowenstein.com <br> Pati Candelario <br> pcandelario@lowenstein.com <br> Nina Rodriguez <br> nrodriguez@lowenstein.com <br><br> *For Plaintiffs R.J.P. and O.R.J.J.* <br> Jennifer Fiorica Delgado <br> jdelgado@lowenstein.com <br> Wayne Fang | *Counsel for Defendant* <br> Philip R. Sellinger <br> United States Attorney <br><br> John F. Basiak Jr. <br> john.basiak@usdoj.gov <br> Angela E. Juneau <br> angela.juneau@usdoj.gov <br> Samantha R. D'Aversa <br> samantha.daversa@usdoj.gov <br> David W. Inkeles <br> david.inkeles@usdoj.gov <br> Assistant United States Attorneys <br><br> U.S. Attorney's Office <br> 402 East State Street, Room 430 <br> Trenton, NJ 08608 <br> T: 609.858.0309 <br> F: 609.989.2275 |

1

wfang@lowenstein.com
Markiana Julceus
mjulceus@lowenstein.com
Raymond S. Cooper
rcooper@lowenstein.com

**Lowenstein Sandler LLP**
One Lowenstein Drive
Roseland, New Jersey 07068
T: 973.597.2500
F: 973.597.2400

2. ***Set forth a brief description of the case, including the causes of action and defenses asserted.***

    (a)    <u>**Plaintiffs**</u>

        (1)    **Summary Statement of Facts**

These actions seek compensatory damages on behalf of three families forcibly separated by Defendant when they entered the United States seeking humanitarian relief. The separations were made under an inhumane, destructive, ill-conceived, and recklessly executed policy Defendant designed and administered to separate parents and children who entered the United States together (the "Family Separation Policy"). The Family Separation Policy was intended to, and did, inflict harm on and instill terror in migrant families, primarily from Central America, for the purpose of deterring others like them from seeking asylum in the United States.

Plaintiffs are parents and their minor children: B.Y.C.C. ("Beatriz"[1]) on behalf of herself and her son, M.S.C.C. ("Manuel"); J.A.L.C. ("Jacob") on behalf of himself and his daughter, L.L.G. ("Leya"); and R.J.P. ("Rafael") on behalf of himself and his son, O.R.J.J. ("Orlan").

Beatriz and her then three-year-old son, Manuel, fled El Salvador in May 2018 after a local gang threatened them. On May 28, 2018, Beatriz and Manuel entered the United States through the Rio Grande City Port of Entry, an authorized checkpoint, where they were inspected and then detained. Two days later, United States Customs and Border Patrol ("CBP") officers loaded Beatriz and Manuel into the backseat of a jeep and drove them to the parking lot of the Port Isabel Detention Center in Los Fresnos, Texas. There, an officer grabbed Manuel and his small backpack out of Beatriz's lap and placed him in the backseat of another jeep. As the officers carried him away, Manuel began screaming and hitting them. Delayed in his speech, he cried "Mama," using that word for the first time in his panic. After a few minutes of witnessing Manuel's anguish and hearing his screams,

---

[1] Plaintiffs use pseudonyms rather than initials, as names are more easily associated with individuals.

Beatriz got out of the jeep that had transported them and hurried over to the other jeep where the officers had put Manuel. The officers refused to let Beatriz inside to hold her son. Instead, she was forced to stand outside Manuel's window, reaching out for him and offering words of comfort through the glass, as Manuel continued crying, hitting the window, and calling out for her. After several minutes, the immigration officers drove off with Manuel, leaving Beatriz standing in the parking lot. Other officers then handcuffed her and escorted her into the detention center. Manuel was flown to New York City and placed in a shelter there. Beatriz and Manuel did not see each other again for 42 days. Beatriz was not prosecuted for illegal entry, nor could she have been given that she and Manuel lawfully presented themselves at an authorized checkpoint and claimed asylum.

Jacob and his then four-year-old daughter, Leya, fled Honduras to escape violence and death threats from a local gang. They arrived in the United States on April 7, 2018. They crossed the Rio Grande near Hidalgo, Texas, and entered the United States. Once in the United States, they approached CBP officers and asked for help. Jacob turned over their documents, including Leya's birth certificate naming him as her father, as well as his Honduran identification card. The officers searched them, confiscated their few belongings, and drove them to the Rio Grande Valley Processing Center. In the middle of that night, CBP officers ripped Leya from Jacob's arms and carried her away as she screamed for her father. Jacob got on his knees and begged the officers to bring her back. They responded by accusing Jacob of having kidnapped his daughter, despite proof of parentage, and told him that he would not see her again. Without telling Jacob where they had taken his little girl, officers transferred him to several immigration detention centers over their three-month separation. Other officers flew Leya to a detention facility in Michigan. Leya describes the officers as having drugged and kidnapped her. Jacob and Leya did not see each other again for 93 days. Defendant never charged or prosecuted Jacob for any criminal offense. Just before reunifying Jacob and Leya pursuant to court order, ICE officers told Jacob that he would be allowed to see his daughter by videoconference. When the call was initiated, however, a small boy who was looking for his father appeared on the screen. Jacob panicked, believing that the officers did not know which child was his and fearing that he and Leya would never be reunited. This fear did not subside until he finally saw Leya in person the following day.

Rafael and his then twelve-year-old son, Orlan, fled Guatemala to escape escalating death threats from a local governing body that sought to deprive the family of their right to ancestral indigenous lands. On June 15, 2018, while entering the United States, they walked toward the first CBP officers they saw intending to explain that they were fleeing persecution and death threats (the basis for their grants of asylum three years later). The officers threatened to shoot them and announced their intention to take Orlan away from Rafael. Orlan and Rafael were detained together for two days and then separated. Rafael was transferred to the custody of the U.S. Marshals Service, which transported him and other parents to the El Paso County Jail. The next morning, CBP transferred Orlan to the Clint Border Patrol Station, less than an hour's drive from El Paso. Meanwhile, the U.S. Marshals Service transported Rafael to federal court where, on the advice of a lawyer, he pled guilty to misdemeanor illegal entry in hopes that doing so would lead to speedier reunification with his son. The court sentenced him to time served, after which he was

temporarily held in a facility in El Paso for a number of days. Although Orlan was then in a nearby CBP facility, Defendant did not reunify him with his father and did not inform either one of the other's whereabouts. Instead, immigration officers transported them in opposite directions: Rafael to New Mexico and Orlan to East Texas, nearly 1,000 miles apart. Rafael and Orlan did not see each other for 37 days. On the day Orlan and Rafael were supposed to be reunited, Orlan and his ORR travel escort flew to a detention facility somewhere in the Southwest. Upon arriving at the facility, however, they discovered that the officials in charge did not know where his father was. Orlan spent that night in an ORR shelter, reliving the trauma of his initial separation from his father, before he was eventually reunited with Rafael the next day.

During the separations, Defendant provided the parents and children only limited or no information about each other's locations and safety. Defendant facilitated communication between Beatriz and Manuel, but the calls only aggravated their distress because Manuel could not effectively communicate by telephone given his language delay and was upset when he heard his mother's voice but could not see her due to Defendant's refusal to arrange videoconferencing. Defendant never established communication between Jacob and Leya who spoke only twice during their separation in calls arranged by Jacob's lawyers. Defendant arranged only two calls between Rafael and Orlan.

### (2) Plaintiffs' Claims

Plaintiffs bring this lawsuit under the Federal Tort Claims Act, 28 U.S.C. §§ 1331 and 1346(b) ("FTCA"), seeking redress for themselves and their children for the extraordinary harm they suffered and continue to suffer as a result of the separations, including severe and ongoing mental, emotional, and physical trauma.

On August 15, 2023, this Court issued its decision on Defendant's Motions to Dismiss. The Court denied Defendant's motions under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. It found "each of the FTCA exceptions raised in [Defendant]'s Motions to Dismiss either inapplicable or presently lacking in factual support."

The Court further denied Defendant's motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, except that it dismissed Beatriz and Manuel's and Rafael and Orlan's negligent supervision claims "to the extent that they relied on the theory that Defendant was generally negligent in allowing families to be separated." However, it "allow[ed] such claims to remain to the extent they are based on the assault and battery claims." The Court also dismissed Jacob and Leya's claim for negligent infliction of emotional distress.

Beatriz and Manuel's remaining claims are brought under Texas law, and include claims for intentional infliction of emotional distress, negligence, negligent supervision (based on assault and battery), negligent undertaking, tortious interference with the parent-child relationship, abuse of process, assault and battery, and breach of fiduciary duty.

Jacob and Leya's remaining claims are brought under Michigan law, and alternatively Texas law, and consist of claims for intentional infliction of emotional distress, negligence, negligent undertaking, breach of fiduciary duty, child abduction, abuse of process, assault and battery, and loss of consortium.

Rafael and Orlan's remaining claims are brought under Texas law and consist of claims for intentional infliction of emotional distress, negligence, negligent undertaking, tortious interference with the parent-child relationship, and breach of fiduciary duty.

**(b)** **Defendant's Answers**

The United States maintains that it is immune from suit under the FTCA on several grounds, including that the separation of a Plaintiff from his or her child was pursuant to the execution of federal criminal and immigration laws, and Plaintiffs' claims are based upon discretionary, policy-based conduct. The United States further maintains that Plaintiffs have not pleaded actionable claims under applicable state law. The United States' responses to Plaintiffs' factual allegations are set forth in the three answers filed on October 17, 2023.

3. *Have settlement discussions taken place?* Yes _____   No _____

   *[Redacted by the Court]*

   **(a)** **What was plaintiff's last demand?**

   (1) Monetary demand:

   (2) Non-monetary demand: N/A

   **(b)** **What was Defendant's last offer?**

   (1) Monetary offer:

   (2) Non-monetary offer:

4. *The Parties met pursuant to Federal Rule of Civil Procedure 26(f) on several occasions from August 31 to November 7, 2023.*

   *[resolved]* Through these meetings, the Parties have agreed on all but one paragraph of a Proposed Confidentiality Order, attached as **Exhibit A**. The Parties have also agreed on a protocol to govern the discovery of electronically stored information (the "ESI Protocol"), attached as **Exhibit B**.

   The Parties agree to continue the meet-and-confer process under Rule 26(f) regarding discovery other than Automatic Disclosures (as defined in Section 9(b) below) after the Automatic Disclosure Period is complete. *See* Section 9(b) for more information about the scope of Automatic Disclosures and the Parties' agreements regarding procedures governing same.

5.  ***As of the execution of this Proposed Joint Discovery Plan, the Parties have not exchanged the information required by Federal Rule of Civil Procedure 26(a)(1).*** The Parties propose exchanging such information within fourteen (14) days after the Court enters the Confidentiality Order.

6.  ***Explain any problems in connection with completing the disclosures required by Federal Rule of Civil Procedure 26(a)(1).***

    None, except that the Parties agree that disclosures required by Federal Rule of Civil Procedure 26(a)(1) will not be exchanged until after the Court enters the Confidentiality Order.

7.  ***The Parties have not filed disclosures of third-party litigation funding.***

8.  ***The Parties have not yet conducted discovery.***

9.  ***Proposed joint discovery plan:***

    (a)  **Discovery is needed on the following subjects:**

    <u>Plaintiffs</u>

    Plaintiffs intend to seek discovery related to, among other things, the following categories.

    (1)  **Policy-Related Materials**

    Throughout this Proposed Joint Discovery Plan, the term "Materials" refers to all sections listed in Federal Rule of Civil Procedure 34(a)(1)(A) and (B), including any electronically stored information or tangible thing (including e-mails and other communications), however produced or reproduced, and each and every thing from which information can be processed or transcribed.

    Plaintiffs intend to seek discovery of "Policy-Related Materials" regarding the Family Separation Policy, including, without limitation, Materials on the following subjects:

    (i)   the creation, development, and implementation of any pilot program related to the separation of families, including the separation of families who lawfully presented at a port of entry;

    (ii)  the purpose or intent of the Family Separation Policy and the reasons underlying government officials' decision to implement the Family Separation Policy;

    (iii) government officials' knowledge of the potential or actual effects of the Family Separation Policy on individuals subject to the Policy, including but not limited to government officials' knowledge that

        separating children from parents would cause harm to separated parents and children;

(iv)   concerns raised by government officials and others about the Family Separation Policy before, during, and after implementation;

(v)   the creation, development, and implementation of the Zero-Tolerance Policy (with particular emphasis on the application of the Zero-Tolerance Policy to adults traveling with family units), and the relationship, if any, between the Family Separation Policy and the Zero-Tolerance Policy;

(vi)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to the referral of parents to the U.S. Department of Justice for prosecution pursuant to 18 U.S.C. §§ 1325 or 1326 (with particular emphasis on adults traveling with family units);

(vii)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to the designation of children who were separated from a parent as "Unaccompanied Children" ("UC");

(viii)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to the placement of children designated as UCs with the U.S. Office of Refugee Resettlement ("ORR") after Defendant separated the children from their parents;

(ix)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to recording the family relationship between separated parents and children, tracking the locations of separated parents and children as members of a family unit, and sharing information with separated parents about their children and with separated children about their parents;

(x)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to establishing communication between separated parents and children;

(xi)   the creation, development, and implementation of any policies, directives, processes, procedures, and decision-making related to reunifying separated parents and children; and

(xii)   the creation, development, or implementation of the Family Separation Policy in the Rio Grande Valley Sector and/or the El Paso Sector of the southern border.

**(2) Subcategories of Policy-Related Materials**

Policy-Related Materials include, without limitation, the following subcategories:

### (i) Common Discovery

Plaintiffs intend to seek discovery of "Materials" collectively referred to as "Common Discovery." "Common Discovery" means all Policy-Related Materials produced by the United States in the cases *C.M., et al. v. United States*, 2:19-cv-05217-SRB (D. Ariz.), and *A.P.F., et al. v. United States*, 2:20-cv-00065-SRB (D. Ariz.), which consist of approximately 60,000 documents. The Parties have agreed to conduct discovery in phases, beginning with Automatic Disclosures by Defendant, including Common Discovery. For further information on the Parties' agreement regarding the sequencing of discovery, please see Section 9(b) below.

### (ii) Regional Materials

Plaintiffs intend to seek discovery of "Regional Materials," which include all Policy-Related Materials pertaining to the El Paso or Rio Grande Valley Sectors of the southern border. Defendant understands that these Regional Materials are in the custody and control of Customs and Border Protection.

### (iii) Materials produced in Other FTCA Cases

Plaintiffs intend to seek discovery of all Policy-Related Material produced in any other case brought under the FTCA seeking damages for immigrant families separated under the Family Separation Policy ("Other FTCA Cases"); all deposition transcripts and related videos of depositions pertaining to policy-related issues taken in Other FTCA Cases; and all interrogatory answers pertaining to policy-related issues produced in Other FTCA cases.

**(3) Plaintiffs' immigration and detention records**

Plaintiffs intend to seek discovery related to Plaintiffs, including:

(i) each Plaintiff's Alien File ("A-File") existing as of the date of its disclosure and subject to updated disclosures at least two (2) weeks before the deposition of the relevant Plaintiff (if any changes have occurred in that Plaintiff's A-File since the previous disclosure) and an additional updated disclosure prior to the close of fact discovery (if any changes have occurred since the previous disclosure);

(ii) each Plaintiff's I-213;

- (iii) each Plaintiff's CBP subject activity logs (also known as "history logs");

- (iv) each Plaintiff's transfer and/or detention records (if any); and

- (v) each Plaintiff Child's ORR case file.

**(4) Circumstances surrounding Plaintiffs' entry into the United States, their detention, their separation, and their reunification**

Plaintiffs intend to seek discovery related to, among other things:

- (i) Materials pertaining to the personnel files, training, social media posts, complaints about, and evaluations of the individuals who separated Plaintiffs;

- (ii) Materials pertaining to communications concerning Plaintiffs;

- (iii) Materials on government officials' decisions concerning whether to prosecute each of the Plaintiffs under 18 U.S.C. §§ 1325, 1326, or any other statute;

- (iv) Materials on government officials' decisions to separate each of the Plaintiff Parents from his/her child, and the circumstances of the separations, including the manner in which the individual agents separated each of the Plaintiffs;

- (v) Materials on government officials' decisions about where to place each of the Plaintiff Children following separation from the Plaintiff Parents;

- (vi) Materials on the manner in which government officials transferred each of the Plaintiff Children to ORR custody, including whether officials administered drugs to any of the Plaintiff Children during the separation and transfer process;

- (vii) Materials on government officials' treatment of each Plaintiff during the course of their respective detentions;

- (viii) Materials on government officials' knowledge of abuse suffered by any of the Plaintiffs while in Defendant's custody;

- (ix) Materials on government officials' actions, if any, to track Plaintiff Parents and Plaintiff Children as members of a family unit;

- (x) Materials on government officials' actions, if any, to facilitate or prevent communication, either through phone or videoconferencing,

    between each of the Plaintiff Parents and their respective children after separation of the families;

    **(xi)** Materials on government officials' statements or actions to encourage or pressure Plaintiffs to abandon their asylum claims, including any statements or actions suggesting or indicating that a Plaintiff Parent must abandon his/her asylum claim in order to be reunified with his/her child;

    **(xii)** Materials on government officials' actions, if any, to ensure that Plaintiff Parents were or were not deported without their children;

    **(xiii)** Materials on government officials' actions, if any, regarding the reunification of the Plaintiffs;

    **(xiv)** Materials concerning the retention, storage, and organization of Government records concerning each of the Plaintiffs;

    **(xv)** images and videos, including surveillance camera and body camera footage, relating to the circumstances surrounding Plaintiffs' entry, their detention, their separation, and their reunification; and

    **(xvi)** Materials on the conditions at the CBP facilities where Plaintiffs were detained.

**(5)** **Injuries suffered by Plaintiffs**

Plaintiffs intend to seek discovery of Materials concerning the physical, medical, emotional, and psychological harms suffered by each of the Plaintiffs as a result of their separation.

**(6)** **Any and all information or documents in Defendant's possession**

Plaintiffs intend to seek discovery related to any and all information or documents in Defendant's possession, custody, or control that are relevant to the facts as alleged in each of the Complaints, or which will be used in support of any defense.

**Defendant**

Defendant intends to seek discovery regarding liability and damages.

**(b)** **Phased Discovery**

The Parties have agreed to conduct discovery in phases. Defendant agrees to produce certain discovery on a rolling basis ("Automatic Disclosures") during a ninety- (90-) day automatic disclosure period, which shall commence on the date

the Court enters the Confidentiality Order (the "Automatic Disclosure Period"). Plaintiffs agree to hold discovery requests under the Federal Rules in abeyance during the Automatic Disclosure Period, except that Plaintiffs reserve the right to propound discovery requests after 30 days for relevant national and regional Policy-Related Discovery the United States previously produced in Other FTCA Cases, which the Defendant does not produce as part of Common Discovery. Defendant reserves the right to make objections to national and regional Policy-Related Discovery the United States previously produced in Other FTCA Cases.

**(1)    Disclosures within 30 days**

Defendant agrees to make the following automatic disclosures within 30 days of entry of the Confidentiality Order:

(i) Common Discovery as described in Section 9(a)(2)(i) above that is "production-ready"; the initial disclosure of Common Discovery Materials will bear the original bates-stamping from productions in the *C.M.* and *A.P.F.* cases and will include the redactions prior to any party agreements or court orders in those cases;

(ii) Plaintiffs' immigration and detention records as described in Section 9(a)(3) above, to the extent they are readily available; and

(iii) Sixteen (16) deposition transcripts, together with the exhibits to these depositions.[2]

**(2)    Disclosures within 90 days**

Defendant agrees to make the following automatic disclosures within 90 days of entry of the Confidentiality Order:

(i) The least redacted versions of Common Discovery that the United States produced to the plaintiffs in *C.M.* and *A.P.F.* based on the parties' agreements and court orders in those cases, to the extent that such versions were not produced by Defendant in this case within the initial 30-day period. Defendant reserves the right to assert any appropriate objection to the production of these documents (including, but not limited to, undue burden) and will

---

[2] These transcripts and exhibits are from the depositions of Matt Albence, John Bash, Michael Dougherty, Robert Guadian, Gene Hamilton, Mellissa Harper, Brian Hastings, Thomas Homan, Kevin McAlleenan, Tracy Short, Tricia Swartz, Ronald Vitiello, Jonathan White, Chad Wolf, and the 30(b)(6) deposition of the United States Department of Homeland Security (by and through James McCament) in the *C.M.* and *A.P.F.* cases.

      serve any such objection within 30 days of the entry of the Confidentiality Order.

   (ii) Regional Materials as described in Section 9(a)(2)(ii) above;

   (iii) Materials and information pertaining to the circumstances surrounding Plaintiffs' entry into the United States, their detention, their separation, and their reunification as described in Section 9(a)(4) above;

   (iv) Any remaining immigration and detention records as described in Section 9(a)(3) above that are not produced within the initial 30-day period; and

   **(iii)** Materials and information pertaining to injuries suffered by Plaintiffs, as described in Section 9(a)(5) above.

**(3) Continuing discovery after 90 days**

Following the Automatic Disclosure Period, the Parties agree to meet and confer about the next steps in the discovery process and respectfully request the opportunity to submit a supplemental Joint Discovery Plan at that time.

The Parties agree that no discovery shall be foreclosed during the continuing discovery period following the Automatic Disclosure Period. Plaintiffs may seek additional fact discovery from Defendant, including discovery regarding policy-related issues, and Defendant retains the right to object to such additional discovery requests.

**(4) Discovery from Plaintiffs**

Defendant may seek written discovery from Plaintiffs 60 days after the entry of the Confidentiality Order.

**(c)** ~~Proposed~~ **schedule:**

 (1) Fed. R. Civ. P. 26 Disclosures: <u>Fourteen (14) days after entry of the Confidentiality Order</u>.

 (2) E-Discovery conference pursuant to L. Civ. R. 26.1(d): <u>Fourteen (14) days after the Automatic Disclosure Period</u>.

 (3) Service of initial written discovery: <u>Ninety (90) days after the Automatic Disclosure Period</u>, except as provided in Section 9(b) above.

 (4) Motions to amend or to add parties to be filed by <u>July 3, 2024</u>.

  (5) Fact discovery should be completed by <u>September 1, 2024</u>.

  (6) Expert reports should be due on <u>October 1, 2024</u>.

  (7) Rebuttal expert reports should be due on <u>November 3, 2024</u>.

  (8) Expert depositions should be completed by <u>December 2, 2024</u>.

  (9) Dispositive motions to be served within __45__ days of completion of discovery.

**(d) Set forth any special discovery mechanism or procedure requested.**

Plaintiffs' requests for documents will include emails, videos, and any other electronically stored information relevant to the claims set forth in the Complaints. Such discovery shall be in accordance with the ESI Protocol attached as Exhibit B.

Defendant will not withhold any Common Discovery document previously produced in Other FTCA Cases.

The Parties agree not to object to the use of the "policy-related" deposition transcripts or videos from the *C.M.* and *A.P.F.* cases, or in any other case from which a deposition transcript video is produced, on the ground that the depositions were taken in a different action. The Parties reserve all other objections to the use of deposition transcripts or videos from Other FTCA Cases under the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

Defendant agrees to defer depositions of Plaintiffs toward the end of the fact discovery period. Any examinations of Plaintiffs pursuant to Federal Rule of Civil Procedure 35 shall also be deferred until the end of fact discovery.

**(e) A pretrial conference may take place after a decision on dispositive motions.**

**(f) Trial date: <u>To be set by Court</u>**

  (Jury Trial; Non-Jury Trial __X__).

10. *Do you anticipate any special discovery needs (i.e., videotape/telephone depositions, problems with out-of-state witnesses or documents, etc.)? Yes __X__ No ___. If so, please explain.*

The Parties agree that all depositions and all examinations, whether live or virtual, including Rule 35 Examinations, will be video recorded.

The Parties agree that Defendant will hire, at Defendant's expense, federal court-certified Spanish interpreters for all depositions and Rule 35 Examinations that Defendant initiates and require interpretation.

>The Parties agree that the location for all depositions of Plaintiffs will be Lowenstein Sandler LLP's office in Roseland, New Jersey.

11. ***Do you anticipate any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced?***
    Yes ____ No _X_

    ***If so, how will electronic discovery or data be disclosed or produced? Describe any agreements reached by the Parties regarding same, including costs of discovery, production, related software, licensing agreements, etc.***

    >The Parties anticipate voluminous and complex discovery that is stored electronically. As a result, the Parties have agreed to an ESI protocol, attached as Exhibit B.

12. ***Do you anticipate entry of a Discovery Confidentiality Order?***

    >The Parties submit a Proposed Confidentiality Order as Exhibit A. The Parties agree that a Party's compliance with the terms of the Confidentiality Order shall not operate as an admission that any particular material is or is not (i) confidential, (ii) privileged, or (iii) admissible in evidence at trial. The Parties agree to follow Federal Rule of Civil Procedure 26(b)(5)(B) with respect to any inadvertently or unintentionally produced or disclosed Confidential Information.

13. ***Do you anticipate any discovery problem(s) not listed above? Describe.***
    Yes _____ No _X_

    >The Parties plan to confer in good faith to resolve any discovery disputes and only seek Court intervention consistent with the Local Civil Rules.

14. ***State whether this case is appropriate for voluntary arbitration (pursuant to Local Civil Rule 201.1 or otherwise) or mediation (pursuant to Local Civil Rule 301.1 or otherwise).***

    ***If not, explain why and state whether any such procedure may be appropriate at a later time (i.e., after exchange of pretrial disclosures, after completion of depositions, after disposition or dispositive motions, etc.).***

    >This case is not appropriate for voluntary arbitration or mediation at this time. The Parties believe, however, that a settlement conference with the Court may be productive at the appropriate stage.

15. ***Is this case appropriate for bifurcation?*** Yes _____ No _X_

16. ***An interim status/settlement conference (with clients in attendance), should be held in May 2024.***

    >The Parties agree that Plaintiff Children should be excused from any conference with the Court.

17. ***The Parties do not consent to the trial being conducted by a Magistrate Judge.*** However, the Parties agree that the case may be suitable for reference to a Magistrate Judge for a settlement conference at a later date.

18. ***Identify any other issues to address at the Rule 16 Scheduling Conference.***

The Parties do not anticipate additional issues at this time.

19. The Court will conduct a telephone status conference with counsel on January 17, 2024 at 11:00am. Plaintiffs' counsel must initiate the conference.

dated: Nov. 14, 2023

So Ordered —
DSSfut
USMJ